## NEW YORK LIFE INS. CO. v. RENAULT.

(District Court, D. New Jersey. February 25, 1926.)

1. Insurance ⬤⟞665(3).

Fraud in procurement of life insurance policy *held* established.

2. Witnesses ⬤⟞219(4)—Insured's statement to physician after application, as guide in diagnosis of disease, undisclosed in application, held admissible; privilege being expressed in policy.

Insured's statement to physician after application, but before delivery of policy, as guide in diagnosis of disease, undisclosed in application, *held* admissible; the privilege being expressly waived in policy.

3. Insurance ⬤⟞249—Insurance company, without legal remedy because of incontestable clause, held entitled to sue in equity for cancellation of policy fraudulently procured.

Insurance company unable, because of incontestable clause, to assert fraud in procurement, of policy in action thereon, and hence without legal remedy, *held* entitled to sue in equity for cancellation and rescission of policy.

In Equity. Suit by the New York Life Insurance Company against Margaret Renault. Decree for complainant.

Lindabury, Depue & Faulks, of Newark, N. J., and J. Edward Ashmead, of Newark, N. J., for complainant.

Cole & Cole, of Atlantic City, N. J., for defendant.

BODINE, District Judge. On April 6, 1922, Alexander Renault, of Egg Harbor,

N. J., applied for a policy of insurance upon his life in the New York Life Insurance Company in the sum of $5,000. On September 15, 1922, Mr. Renault died of cancer of the intestines. On December 24, 1921, Mr. Renault had consulted Dr. Edgar Darnell, of Atlantic City, for indigestion and again on January 7, 1922. On April 16, 1922, Dr. Darnell again examined him and found that he had chronic appendicitis. He went to the hospital on April 19th, and on April 20th was operated upon. The appendix was removed, and the surgeon found that cancer of the intestines had progressed too far for recovery. The bowel was short-circuited, and the patient lingered about six months. On April 28, 1922, the policy was delivered to the insured; the premium of $224.50 being then paid. The policy contains a provision that it shall be incontestable at any time after two years from the date of its issue. The two-year period expired on April 6, 1924. On March 31, 1924, the insurance company filed its bill, asking for the cancellation and rescission of the policy on the ground of fraud.

The policy provides that it shall not be effective, unless the applicant had not consulted or been treated by a physician since his medical examination. The fact was that he had not only been treated, but that a serious operation had been performed. The policy also contains the following provision, which was signed by the insured at the time he applied for insurance:

"I agree, represent, and declare, on behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, that I have carefully read each and all of the above answers, that they are each written as made by me, that each of them is full, complete and true, and that I am a proper subject for life insurance. Each and all of my said statements, representations, and answers contained in this application are made by me to obtain said insurance, and I understand and agree that they are each material to the risk, and that the company, believing them to be true, will rely and act upon them.

"I expressly waive, on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has heretofore attended or examined me, or who may hereafter attend or examine me, from disclosing any knowledge or information which he thereby acquired."

The questions and answers referred to in the above warranty are as follows:

| (8) Have you ever suffered from any ailment or disease of | "Yes" or "No" |
|---|---|
| A. The brain or nervous system? | No |
| B. The heart or lungs? | No |
| C. The stomach or intestines, liver, kidneys, or bladder? | No |
| D. The skin, middle ear, or eyes? | No |
| (9) A. Have you ever had rheumatism, gout, or syphilis? | No |
| B. Have you ever raised or spat blood? (If so, give full details.) | |
| C. Have you ever had any accident or injury? | No |
| D. Have you consulted a physician for any ailment or disease not included in your above answers? | No |
| E. What physician or physicians, if any, not named above, have you consulted or been treated by within the last five years, and for what illness or ailment? (If none, so state.) | None |

The complainant clearly showed at the trial that the insured, in making his answers, acted fraudulently, and that the false representations as to the state of his health and his freedom from illness had resulted in the issuance of the policy in question. Not only had Dr. Darnell attended the insured, but, when the insured went to the Atlantic City Hospital for his operation, he was questioned by Dr. Abraham Rechtmann, and stated to him that he had heartburn, sour stomach, and an unusually rapid heart, that 3 weeks before the examination he had an attack of nausea, felt feverish, and had lost 20 pounds since the attack, and that for the last 8 years he had had an abdominal condition, with attacks somewhat similar to the last one.

[1] To call the answers given to the medical examiner full, complete, and true is to do violence to the plain meaning of the English language. The insured could have had no purpose except to obtain for the benefit of his estate insurance which could not be had if he had made honest answers. The facts adduced clearly show fraud in all its legal significance. Kerpchak v. John Hancock Mutual Life Ins. Co., 117 A. 836, 97 N. J. Law, 196.

[2] Statements made by the insured to his physician for the purpose of guidance in diagnosis and treatment of disease are clearly admissible in evidence. State v. Gruich, 114 A. 547, 96 N. J. Law, 202. The privilege was expressly waived, and failure to receive the testimony of the physicians could only result in fraud. See Wigmore on Evidence, § 2386.

Proof was also offered of the tender of the premium paid.

[3] The complainant has no adequate remedy at law; the policy being incontestable at law after April 6, 1924. See·Mutual Life Insurance Co. of New York v. Hurni Packing Co., 44 S. Ct. 90, 263 U. S. 167, 68 L. Ed. 235, 31 A. L. R. 102. The present action may be maintained. Jefferson Standard Life Insurance Co. v. Keeton (C. C. A.) 292 F. 53; Jefferson Standard Life Insurance Co. v. M'Intyre (C. C. A.) 294 F. 886. Since the policy is now incontestable at law by reason of its express provision, the insurance company has no defense by reason of the fraud practiced upon it; hence the principles laid down in Cable v. United States Life Insurance Co., 24 S. Ct. 74, 191 U. S. 302, 48 L. Ed. 188, approved American Mills Co. v. American Surety Co. of New York, 43 S. Ct. 149, 260 U. S. 360, 67 L. Ed. 306, had no applicability.

A decree may be entered in accordance with this memorandum. ∴.